**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MARK RIDENOUR Derivatively on Behalf of TIVITY HEALTH, INC., <br><br> Plaintiff, <br><br> v. <br><br> KEVIN G. WILLS, SARA J. FINLEY, ROBERT J. GRECZYN, JR., PETER A. HUDSON, BETH M. JACOB, BRADLEY S. KARRO, PAUL H. KECKLEY, BENJAMIN A. KIRSHNER, LEE A. SHAPIRO, DAWN M. ZIER, ARCHELLE GEORGIOU, DANIEL G. TULLY, DONATO TRAMUTO, and ADAM C. HOLLAND, <br><br> Defendants, <br> -and- <br><br> TIVITY HEALTH, INC., a Delaware corporation, <br><br> Nominal Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> C.A. No. |

**VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT**

Plaintiff Mark Ridenour ("Plaintiff"), by his attorneys, submits this Verified Stockholder Derivative Complaint for Violations of Securities Laws, Breach of Fiduciary Duty, Waste of Corporate Assets, and Unjust Enrichment. Plaintiff alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff which are based on personal knowledge. This complaint is also based on the investigation of Plaintiff's counsel, which included, among other things, a review of public filings with the U.S. Securities and Exchange Commission ("SEC") and a review of news reports, press releases, and other publicly available sources.

## NATURE AND SUMMARY OF THE ACTION

1.      This is a stockholder derivative action brought by Plaintiff on behalf of Nominal Defendant Tivity Health, Inc. ("Tivity" or the "Company") against members of its board of directors (the "Board") and members of upper management. The wrongdoing alleged herein has caused substantial damage to Tivity's reputation, goodwill, and standing in the business community and has exposed Tivity to substantial potential liability for violations of federal securities laws and the costs associated with defending itself. The violations of the law outlined herein have damaged Tivity in the form of, among other things, millions of dollars in losses to the Company's market capitalization.

2.      This is a shareholder derivative action that seeks to remedy wrongdoing committed by Tivity's directors and officers from March 8, 2019 through the present (the "Relevant Period").

3.      Tivity provides fitness, nutrition, and social connection solutions in the United States.  Tivity initiated the acquisition of Nutrisystem, Inc. ("Nutrisystem") in November 2018 ("the Nutrisystem Acquisition"). The Company touted that the Nutrisystem Acquisition would improve the Company's business prospects and result in "meaningful value" for Tivity shareholders.

4.      The Nutrisystem Acquisition was finalized on March 8, 2019, at a purchase price of around $1.3 billion. After the Nutrisystem Acquisition, the Company assured investors that Nutrisystem was smoothly being incorporated into the Company's nutrition business. The transition was, in actuality, far from harmonious. There were a multitude of problems associated with the Nutrisystem Acquisition that only became known to the investing public nearly a year later on February 19, 2020, when Tivity revealed less than impressive financial results for the last quarter of 2019, disclosing an impairment of around $377 million associated with the Company's Nutrition business.

2

5.      Also on February 19, 2020, during a conference call, Robert Greczyn said the Company's nutrition business had "not worked out as well as planned" since the Nutrisystem Acquisition. Mr. Greczyn confirmed Nutrisystem was performing "well below its potential." In response, the price of the Company's stock fell 45%, from $22.93 per share at the close of trading on February 19, 2020, to $12.50 per share at the close of trading on February 20, 2020.

6.      During the Relevant Period, the Individual Defendants breached their fiduciary duties by personally making and/or causing the Company to make a multitude of materially false and misleading statements and/or fail to disclose that: (1) Tivity's integration of Nutrisystem into the Company's Nutrition segment was not proceeding as well as the Individual Defendants purported, and consequently, the Nutrition segment was facing serious operational challenges; (2) the foregoing issues would inevitably have a substantial negative impact on the Company's financial results and overall prospects; and (3) the Company failed to maintain internal controls. As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

7.      The Individual Defendants failed to correct and/or caused the Company to fail to correct these false and misleading statements and omissions of material fact. They also caused the Company's failure to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls over financial reporting. As a result, the Individual Defendants are personally liable to the Company for breaching their fiduciary duties.

8.      Additionally, the Individual Defendants allowed the Company to repurchase its own stock at prices that were inflated due to the above misrepresentations. The Company repurchased 78,258 shares of its common stock between June 2019 and February 2020 for approximately $1.41 million.  But for the misrepresentations, the stock would have been lower

than it was during that time, and the Company paid close to 1.4 times what it should have for these stock repurchases.

9. Given the breaches of fiduciary duty by the Individual Defendants, most of whom are Tivity's current directors, their collective engagement in fraud, and their extensive business and personal relationships with each other, these defendants cannot be considered disinterested and/or independent directors. Therefore, demand would be futile against a majority of the Board, as they cannot commence litigation against themselves on behalf of Tivity with any level of disinterestedness.

10. As detailed herein, and in the federal securities class action in the Middle District of Tennessee styled *Strougo v. Tivity Health, Inc. et al.*, Case No. 3:20cv165, (the "Federal Securities Class Action"), Tivity's officers and directors substantially damaged the Company by filing false and misleading statements that omitted material adverse facts.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Exchange Act, 15 U.S.C. §78n(a)(1), Rule 14a-9 of the Exchange Act, 17 C.F.R. § 240.14a-9, and Section 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a) and 78t-1) and raise a federal question pertaining to the claims made in the Securities Class Actions based on violations of the Exchange Act. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

12. This derivative action is not a collusive action to confer jurisdiction on a court of the United States that would not otherwise have such jurisdiction.

13. This Court has personal jurisdiction over each of the Defendants because each Defendant is either a corporation incorporated in this District or he or she is an individual who has minimum contacts with this District to justify the exercise of jurisdiction over him or her.

14.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District and Defendants have received substantial compensation in this District by engaging in various activities that had an effect in this District. Venue is proper in this District because the Company and the Individual Defendants have conducted business in this District and Defendants' actions have had an effect in this District.

## THE PARTIES

### Plaintiff

15.     Plaintiff Mark Ridenour is and has continuously been a stockholder of Tivity during the wrongdoing complained of herein.

### Nominal Defendant

16.     Defendant Tivity Health, Inc. is a Delaware corporation with its principal executive offices located at 701 Cool Springs Boulevard in Franklin, Tennessee 37067.

### Individual Defendants

17.     Defendant Kevin G. Wills ("Wills") is Tivity's Chairman of the Board, and he has served in this position since November 2015 and as a director since 2012. During the Relevant Period, Defendant Wills received a compensation package totaling $310,007.

18.     Defendant Sara J. Finley ("Finley") has been a director of the Company since 2018. Defendant Finley received $165,424 in compensation during the Relevant Period.

19.     Defendant Robert J. Greczyn, Jr. ("Greczyn") is a Tivity director and has been since 2015. Mr. Greczyn has served as Tivity's interim chief executive officer ("CEO") since February 2020. During the Relevant Period, Defendant Greczyn received $215,007 in compensation.

20.     Defendant Peter A. Hudson, M.D. ("Hudson") has been a Tivity Director since 2016. Defendant Hudson is also a member of Tivity's Audit Committee. During the Relevant

Period, Defendant Hudson received $211,447 in compensation.

21. Defendant Beth M. Jacob ("Jacob") is a Tivity director and has been since 2018. Defendant Jacob is also a member of Tivity's Audit and Compensation Committees. During the Relevant Period, Defendant Jacob paid herself $171,371 in total compensation.

22. Defendant Bradley S. Karro ("Karro") has been a Tivity director and has been since 2014. During the Relevant Period, Defendant Karro received $215,007 in compensation.

23. Defendant Paul H. Keckley ("Keckley") has been director of the Company since 2014. Defendant Keckley is also the Chair of the Company's Strategic Review Committee and a member of the Nominating and Corporate Governance Committee. During the Relevant Period, Defendant Keckley received $210,840.00 in compensation.

24. Defendant Lee A. Shapiro ("Shapiro") has been a Company director and since 2015. Defendant Shapiro is also the Chair of the Company's Audit Committee. During the Relevant Period, Defendant Shapiro received $225,007 in compensation.

25. Defendant Daniel G. Tully ("Tully") has been a Tivity director since August 2019.

26. Defendant Benjamin A. Kirshner ("Kirshner") has been a Tivity director since March 2019. Defendant Kirshner is also a member of the Nominating and Corporate Governance and Strategic Review Committees.

27. Defendant Archelle Georgiou ("Georgiou") is a former Tivity director and former member of the Nominating and Corporate Governance and Strategic Review Committees during the Relevant Period. During the Relevant Period, Defendant Georgiou received $212,924 in compensation.

28. Defendant Adam Holland ("Holland") is the Company's chief financial officer ("CFO") and has been since June 2017. During the Relevant Period, Defendant Holland was paid

$805,178.00 in total compensation.

29.     Defendant Donato Tramuto ("Tramuto")was the Company's CEO from June 2014 until his resignation on February 19, 2020. During the Relevant Period, Defendant Tramuto was paid $1,146,622 in total compensation.

30.     Defendant Dawn M. Zier ("Zier") is the former President and Chief Operating Officer. Defendant Zier was also a former director from March 2019 until her mutual termination effective December 4, 2019.

31.     Collectively, Defendants Wills, Finley, Greczyn, Hudson, Jacob, Karro, Keckley, Kirshner, Shapiro, Tully, Zier, Georgiou, Tramuto, and Holland are referred to herein as the "Individual Defendants," and together with the Company, the "Defendants."

32.     Defendants Wills, Finley, Greczyn, Hudson, Jacob, Karro, Keckley, Kirshner, Shapiro, and Tully are referred to herein as the "Director Defendants."

33.     Defendants Hudson, Jacob, and Shapiro are referred to herein as the "Audit Committee Defendants."

34.     Nominal Defendant, Tramuto, and Holland were also named as defendants in the Federal Securities Class Action.

35.     All defendants, except for Nominal Defendant Tivity, are collectively referred to herein as the "Individual Defendants."

36.     The Individual Defendants, because of their positions with Tivity, possessed the power and authority to control the contents of Tivity's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors. Each of the Individual Defendants was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance, and each had the

ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and/or misleading.

## SUBSTANTIVE ALLEGATIONS

### Background

37.     In early December 2018, Tivity declared its intentions to acquire Nutrisystem, a healthcare company. In a December 10, 2018 press release titled "Tivity Health to Acquire Nutrisystem for $1.3 Billion in Cash and Stock," the Company described the benefits of the acquisition of Nutrisystem:

- Combination and increased scale will create unique new value proposition for shareholders, health plans, fitness partners, members and consumers - supporting healthier lifestyles and lowering medical costs
- With the addition of Nutrisystem, Tivity Health will deliver a unique "calories in and calories out" solution
- Expect double digit accretion to Tivity Health's adjusted EPS in 2020 and beyond
- Significant potential for value creation with expected annual cost synergies of ~$30-35 million
- New business model with projected substantial cash flow to de-lever the balance sheet

NASHVILLE, Tenn. and FORT WASHINGTON, Pa., Dec. 10, 2018 /PRNewswire/ -- Tivity Health, Inc. (Nasdaq: TVTY), a leading provider of fitness and health improvement programs, and Nutrisystem, Inc. (Nasdaq: NTRI), a leading provider of weight management products and services, today announced that they have entered into a definitive agreement under which Tivity Health will acquire all of the outstanding shares of Nutrisystem for a combination of cash and stock. Under the terms of the agreement, which has been unanimously approved by the Boards of Directors of both companies, Nutrisystem shareholders will receive $38.75 per share in cash and 0.2141 Tivity Health shares for each share of Nutrisystem common stock. The transaction values Nutrisystem at an enterprise value of $1.3 billion and an equity value of $1.4 billion, or approximately $47.00 per share. The implied stock consideration of $8.25 per Nutrisystem share is based on the volume-weighted average price of Tivity Health's stock for the 10 days

ended December 3, 2018. The implied transaction consideration of $47.00 per share represents a 30% premium based on the volume-weighted average price for Nutrisystem over the last five trading days.

The combined company will be unique in offering, at scale, an integrated portfolio of fitness, nutrition and social engagement solutions to support overall health and wellness. Through this expanded portfolio, Tivity Health will be better positioned to address weight management – a major factor contributing to many chronic diseases. The diversification of Tivity Health's portfolio and increased scale will benefit all the company's stakeholders – including health plans, fitness partners, members and consumers – as these offerings support healthier lifestyles and can lower medical costs. Tens of millions of Americans are currently eligible for Tivity Health's SilverSneakers®, Prime® Fitness, WholeHealth Living™ and flip50™ programs, and millions of people have lost weight with Nutrisystem's products, including Nutrisystem®, South Beach Diet® and DNA BodyBlueprint™.

This transaction will also create meaningful value for Tivity Health's shareholders through the addition of a new independent revenue stream, cost and revenue synergies, and significant potential growth opportunities. The combination of Tivity Health's and Nutrisystem's highly trusted brands and strong marketing and data analytics expertise will allow the combined company to increase awareness and member enrollment and engagement across all consumer audiences. The acquisition of Nutrisystem will further elevate Tivity Health as a leading health and wellness company offering comprehensive fitness, nutrition and social engagement solutions.

38.     Analysts soon queried the Individual Defendants' positive announcements about the acquisition.

39.     On December 10, 2018, research analyst Oppenheimer issued a report noting that the acquisition "complicates an otherwise clean story that was focused on senior health and living," and that "investors are taking the 'sell first and ask questions later' approach as the deal takes away near-term upside in favor of long-term potential." The Oppenheimer report continued "we believe management's credibility affords them the opportunity to prove their bet will pay off."

40.     In connection with the acquisition of Nutrisystem, which was completed on March 8, 2019, the Company paid approximately $1.3 billion in cash and stock. Following the acquisition, analysts continued to point out the negative aspects of the acquisition and their impact on the Company's prospects. On June 25, 2019, William Blair issued a report regarding the acquisition,

saying it was "the main culprit that drove the elimination of roughly half of the company's market capitalization over the past six months." On August 8, 2019, Barrington Research issued a report stating, "[t]he material balance sheet leverage (over $1 billion) that was taken on to do this deal given the recent disappointing operational results at Nutrisystem. . . made this deal a bit of a head-scratcher right out of the gate."

### The Individual Defendants' False and Misleading Statements regarding the Acquisition of Nutrisystem

41.     The Relevant Period begins on March 8, 2019, when Tivity issued a press release entitled "Tivity Health Completes Acquisition of Nutrisystem." which stated:

NASHVILLE, Tenn., March 8, 2019 /PRNewswire/ -- Tivity Health®, Inc. (Nasdaq: TVTY), a leading provider of fitness and health improvement programs, today announced that it has completed its previously announced acquisition of Nutrisystem, Inc., a leading provider of weight management products and services, for approximately $1.3 billion in cash and stock. With this acquisition, Tivity Health will be unique in offering, at scale, an integrated portfolio of fitness, nutrition and social engagement solutions to support overall health and wellness.

**Powerful Calories In + Calories Out Combination**

Tivity Health believes this powerful Calories In + Calories Out combination will offer a holistic approach to addressing critical health needs, lowering healthcare costs, and creating additional value for shareholders, health plans, fitness partners, members and consumers. The combined company will have a footprint of more than 75 million members eligible for Tivity Health's SilverSneakers®, Prime® Fitness, WholeHealth Living™ and flip50™ programs and millions of consumers for Nutrisystem's Nutrisystem®, South Beach Diet®, and DNA Body Blueprint™ products, creating multiple opportunities to increase engagement across all brands.

"We welcome Nutrisystem's powerful brands and talented team to the Tivity Health family. Both Nutrisystem and Tivity Health have successful track records improving health, both in the lives of consumers and health plan members, as well as in the communities where we do business. That experience, coupled with our shared commitment to our varied stakeholders, will power successful execution on the many opportunities that lie ahead," said Donato Tramuto, Tivity Health's Chief Executive Officer. "Since announcing the transaction, we have received overwhelmingly supportive feedback from our health plan customers, members and fitness partners about their interest in the broad array of offerings of our combined company. Our integrated approach – which addresses many of the social determinants of health fundamental to wellness – includes fitness, nutrition and

social isolation, and represents a powerful offering to support healthier lifestyles, combat chronic conditions and lower medical costs. Tivity Health is now a formidable player in where the market is going – moving away from merely 'sick care' toward fully addressing healthcare."

42.     On May 8, 2019, Tivity announced its financial results for the first quarter of 2019 (the "Q1 2019 Press Release") wherein, Defendant Tramuto stated, regarding the Nutrisystem acquisition:

We closed our acquisition of Nutrisystem on March 8, 2019 and the Nutrition segment benefited from strong adjusted EBITDA, due to better than expected March program starts and timing of marketing spend. As a result of the successful media and digital strategy in the first quarter, we plan to leverage Nutrisystem's media and marketing expertise to further increase enrollment and engagement in SilverSneakers and Prime Fitness.

With respect to the Company's Nutrition segment, the Company further stated:

**Segment Results**

* * *

Nutrition Segment – Revenue was $57.6 million, and Adjusted EBITDA was $13.3 million for the 24-day period March 8, 2019 through March 31, 2019.

"Our integration efforts are going well and we are on track to deliver the $9 million to $12 million of cost synergies for 2019 previously discussed," said Adam Holland, Tivity Health's Chief Financial Officer.

43.     On May 9, 2019, Tivity filed a quarterly report on Form 10-Q with the SEC, reporting in full the Company's financial results for the quarter first quarter of 2019 (the "Q1 2019 10-Q"). In the Q1 2019 10-Q, Tivity said:

On December 9, 2018, we entered into an Agreement and Plan of Merger (the "Merger Agreement") with Nutrisystem, a provider of weight management products and services, and Sweet Acquisition, Inc., a wholly-owned subsidiary of Tivity Health ("Merger Sub"). The Merger Agreement provided that Merger Sub would merge with and into Nutrisystem, with Nutrisystem surviving as a wholly-owned subsidiary of Tivity Health (the "Merger"). The Merger was completed on March 8, 2019 ("Closing"). At Closing, except for certain excluded shares, each share of Nutrisystem common stock outstanding immediately prior to Closing was converted into the right to receive $38.75 in cash, without interest, and 0.2141 of a share of Tivity Health Common Stock ("Exchange Ratio") (with cash payable in

lieu of any fractional shares). Nutrisystem shares excluded from the conversion were those shares held by Nutrisystem as treasury stock and shares with respect to which appraisal rights have been properly exercised in accordance with the General Corporation Law of the State of Delaware.

The acquisition of Nutrisystem enables us to offer, at scale, an integrated portfolio of fitness, nutrition and social engagement solutions to support overall health and wellness and to address weight management, chronic conditions, and social isolation.  The fair value of consideration transferred at Closing was $1.3 billion ("Merger Consideration"), which includes cash consideration, the fair value  of the stock consideration, and the fair value of the consideration for Nutrisystem equity awards assumed by Tivity Health that related to pre- combination services[.]

44.     Attached as an exhibit to the Q1 2019 10-Q was a Certification pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by certain Individual Defendants attesting, *inter alia*, that "[t]he information contained in the [Q1 2019 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

45.     On August 8, 2019, Tivity filed a quarterly report on Form 10-Q with the SEC, reporting in full the Company's financial results for the quarter ended June 30, 2019 (the "Q2 2019 10-Q"). The Q2 2019 10-Q contained representations concerning the Nutrisystem Acquisition that were similar to those above.

46.     Attached as an exhibit to the Q2 2019 10-Q was a SOX Certification signed by certain Individual Defendants, attesting, *inter alia*, that "[t]he information contained in the [Q2 2019 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

47.     On November 12, 2019, Tivity filed a quarterly report on Form 10-Q with the SEC, reporting in full the Company's financial results for the quarter ended June 30, 2019 (the "Q3 2019 10-Q"). The Q3 2019 10-Q contained representations concerning the Nutrisystem Acquisition that were similar to those above.

48.     Attached as an exhibit to the Q3 2019 10-Q was a SOX Certification signed by

certain of the Individual Defendants, attesting, *inter alia*, that "[t]he information contained in the [Q3 2019 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

49.     The statements referenced above were materially false and misleading because the Individual Defendants made and/or authorized the making of false statements and/or failed to disclose that: (i) following the Nutrisystem Acquisition, Tivity's Nutrition segment faced significant operational challenges; (ii) the foregoing would foreseeably have a significant impact on Tivity's revenues; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

50.     On February 19, 2020, Tivity issued a press release announcing the Company's financial results for the fourth quarter and year ended December 31, 2019. Tivity disclosed, *inter alia*, that its "Nutrition segment had a disappointing end to 2019," which included "a non-cash impairment charge of $(377.1) million," contributing to a net loss for the Company of $272.8 million in the fourth quarter. At the same time, Tivity announced the resignation of Defendant Tramuto as the Company's CEO, effective immediately.

51.     In response to these disappointing financial results, the Company's interim CEO, Defendant Robert Greczyn, said "[a]dmittedly, the nutrition business has not worked out as well as planned since the completion of the [Nutrisystem Acquisition] in March 2019." Defendant Greczyn said the Company's Nutrition business was "performing well below its potential." Defendant Holland  stated:

> Turning now to the Q4 results of Nutrition segment. Fourth quarter nutrition revenues came in at $113.7 million, a 12.2% decrease compared to the same quarter last year. This decline was primarily driven by a decrease in the DTC business, which includes both the Nutrisystem and South Beach Diet brands.

Defendant Holland further explained, that Tivity "recorded a noncash impairment charge of $240 million to lower the carrying amount of the Nutrisystem trade name."

52.    Later in the call, in response to an analyst question as to whether the Company's Board had "opened any strategic alternatives for Nutrisystem," Defendant Wills said that while the Company "remain[ed] committed to putting these two brands [Tivity and Nutrisystem] together. . .we have been disappointed with the Nutrisystem performance. We believe there are a number of reasons for that to include increased competition, some operational missteps, [and] lack of innovation."

53.    Following these announcements, Tivity's stock price fell $10.43 per share, or 45.49%, to close at $12.50 per share on February 20, 2020.

**The False and Misleading Proxy**

54.    In 2020, the Company filed a Schedule 14a with the SEC, which contained a Notice of Shareholder Meeting (by order of the Board) and Proxy Statement (the "Proxy").

55.    First, the Proxy stated that:

> Our Code of Business Conduct applies to all employees (including officers) and non-employee directors (collectively, "colleagues"). The purpose of the Code of Business Conduct is to provide written standards that are reasonably designed to promote: honest and ethical conduct; full, fair, accurate, timely and understandable disclosure in reports and documents we file with the Commission and other public communications we make; compliance with applicable governmental laws, rules and regulations; prompt internal reporting of violations of the Code of Business Conduct; and accountability for adherence to the Code of Business Conduct, and to deter wrongdoing. A copy of our Code of Business Conduct, as well as any amendments thereto, is available on our website at www.tivityhealth.com. We intend to post any waiver of a provision of the Code of Business Conduct granted to any principal executive, financial, or accounting officers or any material amendment to the Code of Business Conduct on our website.

56.    Second, the Proxy states "each of our committees are set forth in greater detail in each of their respective charters, which are available under "Corporate Governance" accessible

through the "Investors" link on the Company's website at www.tivityhealth.com. The Company believes that the Board leadership structure supports its role in risk oversight. There is open communication between management and directors, and all directors are actively involved in the risk oversight function."

57.     Third, the Proxy refers to the "Report of the Audit Committee." In it, the Company states:

> In accordance with its written charter adopted by the Board, the Audit Committee assists the Board in fulfilling its responsibility for oversight of the quality and integrity of our accounting, auditing and financial reporting processes and our systems of internal control. Management has primary responsibility for our financial statements and financial reporting process, including assessing the effectiveness of our internal control over financial reporting... The Audit Committee also reviewed and discussed the interim financial information contained in each quarterly earnings announcement and Quarterly Report on Form 10-Q with our Chief Financial Officer and our independent registered public accounting firm prior to public release of that information. On several occasions during fiscal 2019, the Audit Committee reviewed with our independent registered public accounting firm and our internal audit department, management's processes to assess the adequacy of our internal control over financial reporting, the framework used to make the assessment, and management's conclusions on the effectiveness of our internal control over financial reporting. Based on the above-mentioned review and discussions with management and our independent registered public accounting firm, the Audit Committee recommended to the Board that our audited financial statements be included in the Form 10-K for filing with the Commission. The Board has adopted a Charter of the Audit Committee, which is available on our website at www.tivityhealth.com.

58.     The Proxy was false and misleading because, while it assures investors that Tivity's code of business conduct and its audit committee charter were followed during the preceding fiscal year, the omissions and non-disclosures during the Relevant Period, as outlined herein, show that the Board and upper management did not comply with the stated provisions of those documents when filing public statements regarding the affairs of the Company with the SEC.

**FIDUCIARY DUTIES**

59.     By reason of their positions as officers and directors of the Company, each of the Individual Defendants owed and continues to owe Tivity and its stockholders fiduciary obligations of trust, loyalty, good faith, and due care and was/is required to use his/her utmost ability to control and manage Tivity in a fair, just, honest, and equitable manner. The Individual Defendants were/are required to act in furtherance of the best interests of Tivity and its stockholders to benefit all stockholders equally and not in furtherance of their personal interest or benefit.

60.     Each Individual Defendant owes and continues to owe Tivity, and its stockholders, the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets.

61.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Tivity, were able to, and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their executive and/or directorial positions with Tivity, each of the Individual Defendants had knowledge of material, nonpublic information regarding the Company. In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's business practices, operations, financials, financial prospects, compliance policies, and internal controls so that the market price of the Company's stock would be based on truthful and accurate information.

62.     To discharge their duties, the Individual Defendants were/are required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company. The Individual Defendants were required to, among other things:

(a)     ensure that the Company complied with its legal obligations and requirements—including requirements involving the filing of accurate financial and operational information with the SEC—and refrain from engaging in insider trading and other deceptive conduct;

(b)      conduct the affairs of the Company in compliance with all applicable laws, rules, and regulations to make it possible to provide the highest quality performance of its business, avoid wasting the Company's assets, and maximize the value of the Company's stock;

(c)      remain informed as to how Tivity conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make a reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with applicable laws; and

(d)      truthfully and accurately guide investors and analysts as to the business operations of the Company at any given time.

### Duties Pursuant to the Company's Code of Business Conduct and Ethics

63.      The Individual Defendants, as officers and/or directors of Tivity, were bound by the Company's Code of Business Conduct[1] (the "Code of Conduct") which required the following:

> The Code of Business Conduct ("Code") describes the standards by which we do business that flow from our values, best business practices, and applicable laws and regulations. The Code applies to all colleagues and to each Director on our Board of Directors.
>
> **Accuracy of our Books and Records**
>
> The deliberate falsification of Company contracts, reports or records is a serious and direct violation of the Code and may be a violation of law. Falsification of records consists of altering, fabricating, falsifying, forging or deliberately omitting any part of a document, contract or record for the purpose of gaining an advantage, or misrepresenting the value of the document, contract, or record.
>
> Colleagues must ensure that all disclosures in our periodic reports and submissions filed with the Securities and Exchange Commission ("SEC") and other public communications are full, fair, accurate, timely, and understandable.
>
> Colleagues responsible for recording transactions or events into the Company's records may not intentionally delay them, or intentionally record incorrect, incomplete or misleading information about any transaction or event.

---

[1] See Tivity Code of Business Conduct:
https://s22.q4cdn.com/106882444/files/doc_downloads/highlights/2019/10/Code-of-Conduct-10-7-2019.pdf

Other colleagues who are not responsible for recording transactions or events must ensure that all information submitted for recording is timely, accurate, and complete.

64.     In addition to these duties, the Audit Committee Defendants owed specific duties to Tivity under the Audit Committee Charter (the "Audit Charter").[2] Specifically the Audit Charter provided for the following responsibilities of the Audit Committee Defendants to:

> to assist the Board in overseeing the accounting and financial reporting processes of the Company and the audits of the Company's financial statements, the Company's compliance with legal and regulatory requirements, the outside auditors' qualifications and independence, and the performance of the outside auditors and of the Company's internal audit function.
>
> ***
>
> The Committee shall review and discuss with management and the outside auditors the annual audited and quarterly unaudited financial statements, the Company's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operation", and the selection, application and disclosure of critical accounting policies and practices used in such financial statements…The discussion of the financial statements and the related critical accounting policies and practices shall occur prior to the public release of such financial statements and the discussion of the related disclosure, including the "Management's Discussion and Analysis of Financial Condition and Results of Operation", shall occur prior to the filing of the Form 10-Q or 10-K. Additionally, based on such review and discussion, the Committee shall consider whether to recommend to the Board that the audited financial statements be included in the Company's Annual Report on Form 10-K.

## **BREACHES OF DUTIES**

65.     The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and/or directors of Tivity, the absence of good faith on their part, and a reckless disregard for their duties to the Company.

---

[2] See Tivity Audit Committee Charter at:
https://s22.q4cdn.com/106882444/files/doc_downloads/highlights/2019/Audit-Committee-Charter-(Tivity-Health)-2019.pdf

66.     The Individual Defendants breached their duty of loyalty and good faith by utterly failing to implement a reasonable, relevant, meaningful, and well-constituted system of internal controls, especially with respect to disclosure of material information regarding the Nutrisystem Acquisition. The Individual Defendants also breached their duty of loyalty and good faith by allowing the Company to cause, or by themselves causing, the Company to make improper statements to the public and the Company's stockholders. These unlawful practices wasted the Company's assets and caused Tivity substantial damage.

67.     The Audit Committee Defendants had a duty to review the Company's earnings, press releases, and regulatory filings. The members of the Audit Committee breached their duty of loyalty and good faith by approving the omission of material information, making the improper statements detailed herein, and failing to properly oversee Tivity's public statements and internal control function.

68.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of Tivity, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein. The Individual Defendants also failed to prevent the other Individual Defendants from taking such illegal actions. In addition, as a result of Individual Defendants' improper course of conduct, the Company is now the subject of the Federal Securities Class Action, which alleges violations of federal securities laws. As a result, Tivity has expended, and will continue to expend, significant sums of money.

## DAMAGES TO TIVITY

69.     The improper accounting practices have exposed the Company to myriad reputation and financial damages, including but not limited to:

(a)     Possible restatements and goodwill impairments;

(b)     Liability arising from the Securities Class Action;

(c)     The loss of credibility with customers and suppliers; and

(d)     Legal and accounting costs associated with litigation, investigations and restatements.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

70.     Plaintiff brings this action derivatively and for the benefit of Tivity to redress injuries suffered, and to be suffered, because of the Individual Defendants' breaches of their fiduciary duties as directors and/or officers of Tivity, waste of corporate assets, unjust enrichment, and violations of Sections 14(a) and 20(a) of the Exchange Act, as well as the aiding and abetting thereof.

71.     Tivity is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

72.     Plaintiff is, and has been continuously at all relevant times, a stockholder of Tivity. Plaintiff will adequately and fairly represent the interests of Tivity in enforcing and prosecuting its rights, and, to that end, has retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

73.     Plaintiff incorporates by reference and re-alleges each allegation stated above as if fully set forth herein.

74.     A pre-suit demand on the Board of Tivity is futile and, therefore, excused. At the time of filing of this action, the Board consists of the following ten individuals: Defendants Finley, Greczyn, Hudson, Jacob, Karro, Kirshner, and Tully, along with non-Defendants, Richard M. Ashworth, Erin L. Russell, and Anthony M. Sanfilippo.

75.     Plaintiff only needs to allege demand futility as to five of the ten Directors who are on the Board at the time this action is commenced.

76.     Demand is excused as to all of the above Director Defendants because each one of

them faces, individually and collectively, a substantial likelihood of liability as a result of the scheme they engaged in knowingly or recklessly to make and/or cause the Company to make false and misleading statements and omissions of material fact and causing the Company to pay 1.4 times the value of own stock (over $430,000 what it was actually worth). The above-mentioned Director Defendants would be unable to impartially investigate the charges and decide whether to pursue action against themselves and other Individual Defendants.

77.     In complete abdication of their fiduciary duties, the Director Defendants either knowingly or recklessly participated in making and/or causing the Company to make the materially false and misleading statements alleged herein. The fraudulent scheme was intended to make the Company appear more profitable and attractive to investors. As a result of the foregoing, the Director Defendants breached their fiduciary duties, face a substantial likelihood of liability, and are not disinterested. Thus, demand upon them is futile and is excused.

78.     Demand as to Director Defendants Finley, Greczyn, Hudson, Jacob, Karro, Kirshner, and Tully is futile because they served as directors during the Relevant Period and received and continue to receive compensation from the Company. During their service to the Board, including in their capacities as members of the Board's various committees, they each conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements outlined herein, consciously disregarded their duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded their duties to protect corporate assets. Therefore, these directors breached their fiduciary duties, face a substantial likelihood of liability, and are not independent or disinterested.

79.     Each of the above Director Defendants, individually and collectively, face a substantial likelihood of liability as a result of their intentional or reckless approval of unnecessary

and harmful repurchases that caused the Company to overpay hundreds of thousands of dollars for its own common stock during the Relevant Period. The above Director Defendants were aware or should have been aware of the misinformation being disseminated about the Company, and yet they approved the repurchases. Thus, the above-mentioned Director Defendants breached their fiduciary duties, face a substantial likelihood of liability, and are not disinterested. Demand upon them is futile and thus excused.

80.     The abovementioned Director Defendants have longstanding business and personal relationships with each other and the Individual Defendants which preclude them from acting independently and in the best interests of the Company and its shareholders.

81.     Defendants Finley and Karro both worked in senior roles at Caremark Rx and its predecessor entities between 1998 and 2007, including as Senior Vice President and Assistant General Counsel and as Executive Vice President, respectively. These conflicts of interest may have negatively impacted Defendants Finley and Karro's ability to adequately and independently monitor the Company's operations and internal controls or call into question the Individual Defendants' conduct. Thus, any demand on these Director Defendants would be futile.

82.     Defendants Hudson, Jacob, and Shapiro served on the Company's Audit Committee during the Relevant Period. Under the Company's Audit Committee Charter, the Audit Committee Defendants were required to ensure the Company's compliance with applicable laws and regulations and to oversee the Company's accounting and financial reporting processes and the performance of the Company's internal audit function. The Audit Committee Defendants did not ensure the integrity of the Company's financial statements and internal controls, as they were required to do under the Audit Committee Charter, and instead allowed the Company to file false and misleading financial statements with the SEC. Thus, the Audit Committee Defendants

breached their fiduciary duties and are not disinterested, and demand is excused as to them.

83.     In violation of the Code of Conduct, the Director Defendants conducted little, if any, oversight of the Company's internal controls over public reporting or of the Company's involvement in the Individual Defendants' scheme to issue materially false and misleading statements to the public and to facilitate the Individual Defendants' violations of law, including breaches of fiduciary duty, mismanagement, and violations of the Exchange Act. In violation of the Code of Conduct, the above-named Director Defendants failed to comply with the law. Thus, the above-mentioned Director Defendants face a substantial likelihood of liability and demand is futile as to them.

84.     The Individual Defendants' conduct described herein and summarized above, including the decision for the Company to allow the repurchases of its own stock, could not have been the product of legitimate business judgment as it was based on bad faith and intentionally reckless or disloyal misconduct. Therefore, none of the above-mentioned Director Defendants can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). As a majority of the Directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as futile.

85.     The acts complained of herein constitute violations of fiduciary duties owed by Tivity's officers and directors, and these acts are incapable of ratification.

**Insurance Considerations**

86.     The Directors may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, i.e.,

monies belonging to the stockholders of Tivity. If there is a directors and officers' liability insurance policy covering the Relevant Period, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Director Defendants, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if the Director Defendants were to sue themselves or certain officers of Tivity, there would be no directors' and officers' insurance protection. Accordingly, the Director Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Director Defendants is futile and, therefore, excused.

87.     If there is no directors' and officers' liability insurance, then the Director Defendants will not cause Tivity to sue any other wrongdoers, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event, as well.

88.     Thus, for all the reasons set forth above, all of the Director Defendants, and, if not all of them, at least a majority of Directors, cannot consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

## **FIRST CLAIM**

### **Against the Individual Defendants**
*for Violations of Section 14(a) of the Exchange Act*

89.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

90.     The Section 14(a) Exchange Act claims alleged herein are based solely on negligence. They are not based on any allegation of reckless or knowing conduct by or on behalf of the Individual Defendants. The Section 14(a) claims alleged herein do not allege and do not sound in fraud. Plaintiff specifically disclaims any allegations of, reliance upon any allegation of,

or reference to any allegation of fraud, scienter, or recklessness with regard to these nonfraud claims.

91.     Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

92.     Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

93.     The Proxy also stated that the Company's directors and employees, including its principal executive officer, principal financial officer, principal accounting officer, and controller, or persons performing similar functions, are subject to the Company's Code of Conduct.  The Proxy was also false and misleading because, despite assertions to the contrary, Tivity's compliance with its respective codes of conduct were not followed, as the Individual Defendants made and/or caused the Company to make the false and misleading statements discussed herein.

94.     In the exercise of reasonable care, the Individual Defendants should have known that by misrepresenting or failing to disclose the foregoing material facts, the statements contained in the 2020 Proxy Statement was materially false and misleading. The misrepresentations and

omissions were material to Plaintiff in voting on the matters set forth for stockholder determination in the 2020 Proxy Statement, including, but not limited to, election of directors, ratification of an independent auditor, and the approval of executive compensation.

95.     The false and misleading elements of the annual Proxy led to the re-elections of all of the Director Defendants, allowing them to continue breaching their fiduciary duties to Tivity.

96.     The Company was damaged as a result of the Individual Defendants' material misrepresentations and omissions in the Proxies

97.     Plaintiff on behalf of Tivity has no adequate remedy at law.

## SECOND CLAIM

### Against the Individual Defendants
*for Violations of Section 20(a) of the Exchange Act*

98.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

99.     The Individual Defendants, by virtue of their positions with Tivity and their specific acts, were, at the time of the wrongs alleged herein, controlling persons of Tivity and officers and directors who made the false and misleading statements alleged herein within the meaning of § 20(a) of the Exchange Act. The Individual Defendants had the power and influence, and exercised same, to cause Tivity to engage in the illegal conduct and practices complained of herein.

100.     Plaintiff on behalf of Tivity has no adequate remedy at law.

## THIRD CLAIM

### Against Individual Defendants
*for Breach of Fiduciary Duties*

101.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

102.     Each Individual Defendant owed to the Company the duty to exercise candor, good

faith, and loyalty in the management and administration of Tivity's business and affairs.

103.   Each of the Individual Defendants violated and breached their fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

104.   The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Tivity.

105.   In breach of their fiduciary duties, the Individual Defendants caused the Company to engage in the misconduct described herein.

106.   In further breach of their fiduciary duties, the Individual Defendants failed to maintain an adequate system of oversight, disclosure, controls, and procedures.

107.   Also in breach of their fiduciary duties, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements that failed to disclose: that: (1) Tivity's integration of Nutrisystem into the Company's Nutrition segment was not proceeding as well as the Individual Defendants purported, and consequently, the Nutrition segment was facing serious operational challenges; (2) the foregoing issues would inevitably have a substantial negative impact on the Company's financial results and overall prospects; and (3) the Company failed to maintain internal controls.

108.   The Individual Defendants failed to correct and/or caused the Company to fail to rectify any of the wrongs described herein or correct the false and/or misleading statements and omissions of material fact referenced herein, rendering them personally liable to the Company for breaching their fiduciary duties.

109.   The Individual Defendants had actual or constructive knowledge that the Company

issued materially false and misleading statements, and they failed to correct the Company's public statements. The Individual Defendants either had actual knowledge of the misrepresentations and omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities.

110.   The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the fraudulent schemes set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent schemes and fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities and engaging in insider sales. The Individual Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

111.   These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

112.   As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Tivity has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

113.   Plaintiff on behalf of Tivity has no adequate remedy at law.

## FOURTH CLAIM

### Against Individual Defendants
*for Unjust Enrichment*

114.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

115.    By their wrongful acts, violations of law, false and misleading statements, and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense and to the detriment of Tivity.

116.    The Individual Defendants either benefitted financially from the improper conduct, received unjust compensation tied to the false and misleading statements, received bonuses, stock options, or similar compensation from Tivity tied to the performance or artificially inflated valuation of Tivity, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

117.    Plaintiff, as a stockholder and a representative of Tivity, seeks restitution from the Director Defendants and seeks an order from this Court disgorging all profits— including benefits, performance-based, valuation-based, and other compensation—obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary duties.

118.    Plaintiff on behalf of Tivity has no adequate remedy at law.

### FIFTH CLAIM

**Against Individual Defendants**
*for Waste of Corporate Assets*

119.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

120.    As a further result of the foregoing, the Company will incur many millions of dollars of legal liability and/or costs to defend unlawful actions and engage in internal investigations, and Tivity will lose financing from investors and business from future customers who no longer trust the Company and its products.

121.    Because of the waste of corporate assets, the Individual Defendants are each liable to the Company.

122.    Plaintiff on behalf of Tivity has no adequate remedy at law.

## PRAYER FOR RELIEF

123.    **FOR THESE REASONS**, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

A.    Declaring that Plaintiff may maintain this action on behalf of Tivity, and that Plaintiff is an adequate representative of the Company;

B.    Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Tivity;

C.    Determining and awarding to Tivity the damages sustained by it because of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre- and post-judgment interest thereon;

D.    Directing Tivity and the Individual Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and protect Tivity and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote the following resolutions for amendments to the Company's Bylaws or Articles of Incorporation and the following actions as may be necessary to ensure proper corporate governance policies:

1)    A proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board; and

2)    A proposal to ensure the establishment of effective oversight of

compliance with applicable laws, rules, and regulations;

3)      Awarding Tivity restitution from Individual Defendants;

4)      Awarding Plaintiff, the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

5)      Granting such other and further relief as the Court may deem just and proper.

Dated: July 22, 2020                    Respectfully submitted,

Of Counsel:                             **FARNAN LLP**

Gregory M. Nespole                      /s/ Michael J. Farnan
**LEVI & KORSINSKY, LLP**               Brian E. Farnan (#4089)
55 Broadway, 10th Floor                 Michael J. Farnan (#5165)
New York, NY 10006                      919 N. Market Street, 12th Floor
T. 212.363.7500                         Wilmington, Delaware 19801
F. 212.363.7171                         (302) 777-0300
gnespole@zlk.com                        bfarnan@farnanlaw.com
                                        mfarnan@farnanlaw.com

                                        *Attorneys for Plaintiff Mark Ridenour*